IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CARMEN SOCORRO MARTINEZ-CARRION**,
    Petitioner,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

Civil No. 22-1268 (BJM)

**OPINION AND ORDER**

Carmen Socorro Martinez-Carrion ("Martinez-Carrion") seeks review of the Social Security Administration Commissioner's ("the Commissioner's") finding that she is not entitled to disability benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Martinez-Carrion contends that the Administrative Law Judge ("ALJ") erred in determining how her right median focal neuropathy and left ulnar neuropathy (carpal tunnel syndrome) diagnosis affected her Residual Functional Capacity ("RFC"). Docket No. ("Dkt.") 19. Further, she asserts the ALJ found her carpal tunnel syndrome not disabling after improperly interpreting medical evidence and failing to develop the record. *Id.* The Commissioner opposed. Dkt. 22. This case is before me by consent of the parties. Dkts. 5, 9. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**STANDARD OF REVIEW**

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The

*Carmen Socorro Martinez-Carrion. v. Commissioner of Social Security*, Civil No. 22-1268 (BJM)                                    2

Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

      A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

      Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In Step One, the Commissioner determines whether the claimant is currently engaged in "substantial

*Carmen Socorro Martinez-Carrion. v. Commissioner of Social Security*, Civil No. 22-1268 (BJM)                             3

gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the ALJ assesses the claimant's RFC and determines at Step Four whether the impairments prevent the claimant from doing the work she has performed in the past. If the claimant can perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final step asks whether she can perform other work available in the national economy in view of her RFC, as well as her age, education, and work experience. If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability. *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of his insured status, or her date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

*Carmen Socorro Martinez-Carrion. v. Commissioner of Social Security*, Civil No. 22-1268 (BJM)                                    4

# BACKGROUND

The following is a summary of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript. Because Martinez-Carrion only challenges the ALJ's finding regarding her carpal tunnel, Dkt. 19, I only discuss the medical records addressing this issue. I also note that she alleged disability beginning on February 24, 2015, Tr. 659, and her date last insured was March 31, 2020. Tr. 90.

*Medical History*

**Dr. Rene C. Gomez-Gomez ("Dr. Gomez")**

On July 18, 2018, consultative examiner Dr. Gomez examined Martinez-Carrion for her disability benefits application and found she suffered from joint pain. Tr. 897. However, he noted she could grip, grasp, and pinch, with both hands; perform finger tapping and opposition of fingers exercises; button a shirt; pick up a coin; and write. *Id.* Lastly, he found Tinel and Phalen tests for carpal tunnel were negative in both hands. *Id.* Thus, he concluded Martinez-Carrion had good strength and was capable of fine manipulation. *Id.*

**Dr. Ramon Ruiz Alonso ("Dr. Ruiz")**

In August 2018, consultative examiner Dr. Ruiz found Martinez-Carrion had normal hand functions without limitations, a normal range of motion, and no motor deficits. Tr. 541.

**HIMA San Pablo Hospital**

On January 22, 2019, Martinez-Carrion visited the emergency room at HIMA San Pablo Hospital in Caguas and was diagnosed with carpal tunnel syndrome in her left arm. Tr. 364. Dr. Jimenez Torres ordered left hand strapping and injected her with 5 milligrams ("mgs") of Decadron. *Id.* Tests showed periarticular osteopenia with no fractures. *Id.*

**Dr. Eric Ramirez Diaz**

On March 20, 2019, Martinez-Carrion received an electromyography ("EMG") and a nerve conduction study ("NCS"). Tr. 330. The EMG showed no findings of radiculopathy or myopathy, while the NCS showed right median focal neuropathy at the wrist and left ulnar neuropathy (carpal tunnel syndrome). *Id.*

**Juncos First Medical**

In May 2019, Martinez-Carrion sought treatment options and surgery referrals for her carpal tunnel syndrome. Tr. 440.

**Dr. Jose Gonzalez-Mendez ("Dr. Gonzalez-Mendez")**

In February 2020, consultative examiner Dr. Gonzalez-Mendez reviewed Martinez-Carrion's condition at the reconsideration stage. Tr. 554–55. He found no new allegations or alleged worsening of symptoms since her initial assessment. Tr. 555. Further, he found the additional examinations submitted did not warrant further physical limitations. *Id.*

**Inspira**

While receiving mental health treatment in 2019 through early 2021, Martinez-Carrion repeatedly mentioned experiencing pain due to her carpal tunnel symptoms. Tr. 72, 75, 77, 79, 380.

**NuScan**

A March 2022 radiology report showed the bone density in Martinez-Carrion's right forearm was similar to the expected mean density for her age and sex. Tr. 10.

*Procedural History*

Martinez-Carrion filed an application for disability benefits on February 5, 2018 alleging disability beginning on February 24, 2015. Tr. 659. Martinez-Carrion appeared at a hearing before the ALJ on October 10, 2020. However, the transcript from this hearing abruptly ends after the

*Carmen Socorro Martinez-Carrion. v. Commissioner of Social Security*, Civil No. 22-1268 (BJM)                               6

ALJ asks Martinez-Carrion her name, age, and date of birth. Tr. 139. On February 9, 2021, she appeared at a second hearing before an ALJ. Tr. 107. Then, she testified she had completed high school and was currently unemployed. Tr. 114. Martinez-Carrion explained she had previously worked as a cashier at a gas station from 2008 until 2015. *Id.* Before that, she worked as a school security guard and a toll booth operator. Tr. 115–16. The ALJ found that only the cashier position was relevant for Martinez-Carrion's Social Security claim. Tr. 116. Martinez-Carrion then confirmed she had knee problems, high blood pressure, and depression. Tr. 117. She further stated she had carpal tunnel and was waiting for the Covid-19 pandemic to recede before undergoing surgery. Tr. 118–19. She also explained that she had been prescribed Caltrate 600D but stopped taking it after running out, 5mg of Lisinopril for blood pressure, Wellbutrin, Temazepam for high cholesterol, and Flexeril for pain related to carpal tunnel. Tr. 123–24.

A Vocational Expert ("VE"), Linda Woodham, also testified. She labeled Martinez-Carrion's job as a gas station cashier as a Cashier II, which is defined as light work in the Dictionary of Occupational Titles ("DOT"). Tr. 126. The ALJ asked the VE to consider a hypothetical individual who, like Martinez-Carrion, was 59 years old, had a high school education, and had previously worked as a gas-station cashier. *Id.* The ALJ then asked the VE to assume this person was limited to the following activities: lifting 20 lbs. occasionally and 10 lbs. frequently; carrying 20 lbs. occasionally and 10 lbs. frequently; sitting, standing, or walking for six hours; and pushing and pulling as much as she can lift and carry. *Id.* Further, her left foot was occasionally limited; she could climb stairs and ramps frequently; climb ladders, ropes, or scaffolds occasionally; balance and stoop frequently; and kneel, crouch, and crawl occasionally. Tr. 126. The VE stated such a person could perform Martinez-Carrion's prior Cashier II job as defined in the DOT, but not as she performed it. *Id.*

*Carmen Socorro Martinez-Carrion. v. Commissioner of Social Security*, Civil No. 22-1268 (BJM)                                7

The ALJ then asked the VE to consider a second person limited to the following: lifting 20 lbs. occasionally and 10 lbs. frequently; carrying 20 lbs. occasionally and 10 lbs. frequently; sitting for six hours; standing or walking six hours; and pushing and pulling as much as she can lift and carry; foot controls with the right foot occasionally and the left foot frequently; handling and fingering with both hands frequently; climbing stairs and ramps frequently; climbing ladders, ropes, or scaffolds occasionally; balancing frequently; stooping frequently; and kneeling, crouching, and crawling occasionally. Tr. 127. Again, the VE stated such a person could perform Martinez-Carrion's prior Cashier II job as defined in the DOT, but not as she performed it. *Id.*

The ALJ next asked the VE to consider a third person. This person had the same physical limitations as the second along with the following mental restrictions: can perform simple, routine tasks; judgment is limited to simple, work-related matters; can interact with supervisors, coworkers, and the public frequently; and can deal with changes in the work setting limited to simple, work-related matters. *Id.* Again, the VE stated such a person could perform Martinez-Carrion's prior Cashier II job as defined in the DOT, but not as she performed it. Tr. 127–28.

The ALJ then asked the VE to consider a fourth person with the following limitations: lifting 20 lbs. occasionally and less than 10 lbs. frequently; carrying 20 lbs. occasionally and less than 10 lbs. frequently; sitting, standing, or walking for six hours; pushing and pulling as much as she can lift and carry; handling and fingering frequently with the right and left hand; climbing stairs and ramps frequently; climbing ladders, ropes, or scaffolds occasionally; balancing frequently; stooping frequently; and never kneeling, crouching, and crawling. Tr. 128–29. The VE again stated such a person could perform Martinez-Carrion's prior Cashier II job as defined in the DOT, but not as she performed it. Tr. 129.

Lastly, the ALJ asked the VE to consider a person who was limited to carrying 10 lbs. occasionally and less than 10 lbs. frequently; sitting for six hours; standing or walking for two hours; pushing and pulling as much as she can lift and carry; foot controls limited with the right foot occasionally and the left foot frequently; handling and fingering frequently with both hands; climbing stairs and ramps frequently; climbing ladders, ropes or scaffolds occasionally; balancing, frequently; stooping frequently; and kneeling, crouching, and crawling never. *Id*. The VE stated such a person could not perform Martinez-Carrion's prior Cashier II job as defined in the DOT or as she performed it. *Id*.

The ALJ announced his decision on March 4, 2021. Tr. 101. He found that Martinez-Carrion had not engaged in substantial gainful activity since the alleged onset date, and that she had the severe impairments of lumbar degeneration, obesity, status-post right knee surgery, bilateral knee osteoarthritis, right median focal neuropathy, left ulnar neuropathy, and major depressive disorder. Tr. 92.

Proceeding to Step Three, the ALJ found that Martinez-Carrion did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id*. In support of this determination, the ALJ noted that he had considered Listings 1.02A, 1.04A, 11.14, and 12.04. Tr. 93. Martinez-Carrion does not challenge this finding.

At Step Four, the ALJ found Martinez-Carrion could lift, carry, push, and pull 20 lbs. occasionally and 10 lbs. frequently. Tr. 94. Further, she could sit, stand, and walk for six hours each in an eight-hour workday. *Id.* The ALJ found Martinez-Carrion could handle items frequently with the bilateral hands, but had fingering limitations frequently in both hands. *Id.* Next, he found Martinez-Carrion could climb ramps and stairs frequently; climb ladders, ropes or scaffolds occasionally; balance and stoop frequently; and kneel, crouch, and crawl occasionally. *Id.*

*Carmen Socorro Martinez-Carrion. v. Commissioner of Social Security*, Civil No. 22-1268 (BJM)                                            9

Regarding her mental capabilities, the ALJ found Martinez-Carrion could understand, remember, and carry out instructions for simple, routine tasks; use judgment and deal with changes in the work setting involving simple work-related decisions; and interact with supervisors, coworkers, and the public frequently. *Id.*

As mentioned, Martinez-Carrion only challenges the ALJ's findings regarding her carpal tunnel. Dkt. 19. There, the ALJ found medical evidence corroborated her diagnosis because March 2019 EMG and NCS tests reflected a moderate carpal tunnel syndrome affecting sensory components of her hands. Tr. 96. Further, the record included "some of the signs and symptoms typically associated to median and ulnar nerves neuropathy [carpal tunnel syndrome], such as pain and discomfort." *Id.* However, the ALJ found Martinez-Carrion exhibited none of the following symptoms: chronic pain in the forearms, wrists, and hands; burning sensation; tingling sensation; marked range of motion limitations; neurological deficits; and muscle weakness, atrophies, or deformities of the wrists, hands, or fingers. *Id.* Further, the ALJ noted the record contained no evidence of physical therapy, wrist braces worn at night, nor evidence of more invasive treatment such as corticosteroids, injections for pain, or recommendations for surgery. *Id.*

The ALJ also noted consultative examiner Dr. Gomez's 2018 evaluation showed, among other things, that Martinez-Carrion's hands were "nearly normal, except for pain bilaterally." Tr. 98. Further, he determined her Phalen and Tinel signs were negative bilaterally. *Id.* The ALJ found these determinations consistent with objective evidence, including diagnostic imaging, and prescribed treatment as discussed above. *Id.* After considering this and Martinez-Carrion's other limitations, the ALJ found that, although severe, none of Martinez-Carrion's physical impairments were disabling. *Id.* Accordingly, he limited her to light work and included additional fingering limitations in both hands as mentioned above. Tr. 94.

Thus, the ALJ found Martinez-Carrion could perform her past relevant work as a Cashier II as it is generally performed. Tr. 100. Accordingly, the ALJ found she was not disabled. *Id.* The Appeals Council denied review, Tr. 1, and this action followed.

## DISCUSSION

Martinez-Carrion asserts the ALJ erred in assessing her carpal tunnel diagnosis by failing to adequately weigh medical evidence from 2019 and 2020 when evaluating her physical RFC, erroneously interpreting raw medical data, and neglecting to properly develop the record. Dkt. 19. The Commissioner argues the ALJ properly relied on a 2018 evaluation and the record as a whole supports his RFC determination. Dkt. 22 at 7–10. Further, the Commissioner disputes that the ALJ interpreted raw medical data or had a duty to further develop the record. *Id.* at 11–14. I turn to the parties' arguments.

### I. Physical RFC Evidence

The RFC is an administrative assessment of a claimant's ability to do physical and mental work on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). SSR 96-8p. It is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir. 2007) (*citing* 20 C.F.R. §§ 416.927(e)(2), 416.946). However, because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* at 619. A claimant must provide the evidence of an impairment and its severity while the ALJ must resolve any evidentiary conflicts and determine the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982) (citing *Richardson v. Perales*, 402 U.S. at 389). In this analysis, the ALJ should consider whether "new evidence [received] after the medical source made his or her medical

opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." 20 C.F.R. § 416.920c. However, an ALJ "[is] not obligated to discuss every bit of evidence." *Martinez v. Comm'r of Soc. Sec.*, 2021 WL 1201424, at *5 (D.P.R. Mar. 30, 2021) (citing *Frost v. Barnhart*, 121 F. App'x 399 (1st Cir. 2005)).

Martinez-Carrion argues the ALJ failed to consider the severity of her carpal tunnel syndrome by relying on Dr. Gomez's 2018 disability determination assessment. Dkt. 19 at 10. When discussing the severity of Martinez-Carrion's carpal tunnel syndrome, the ALJ quoted the 2018 assessment's finding that, "there is no chronic pain in the forearms, wrists and hands, burning sensation, tingling sensation, marked [range-of-motion] limitations, neurological deficits, muscle weakness, atrophies, or deformities of the wrists, hands or fingers." Tr. 96. However, Martinez-Carrion points out she was not diagnosed with carpal tunnel until 2019. Dkt. 19 at 10. And she contends the ALJ failed to consider this diagnosis, the March 2019 EMG, and a May 2019 referral for surgery. *Id.* at 12.

The ALJ must consider whether evidence post-dating the 2018 evaluation rendered that finding more or less persuasive. *See* 20 C.F.R. § 404.1420c(c)(5). Martinez-Carrion received her January 2019 carpal tunnel diagnosis after she sought emergency room treatment for pain in her left hand. Tr. 364. Her March 2019 EMG and NCS corroborated this diagnosis. Tr. 330. Contrary to her assertion, the ALJ mentioned both her 2019 carpal tunnel diagnosis and the EMG. Tr. 96. In May 2019, she sought treatment options and a surgery referral, Tr. 440, which the ALJ did not discuss. However, she had not received surgery by her February 2021 hearing. Tr. 118. Though she testified that she was waiting for Covid-19 to subside, she received her diagnosis in January 2019 and first sought referrals in May of that year. There is no explanation of why she did not receive or at least schedule surgery or further treatment between January 2019 and Covid's spread in

Case 3:22-cv-01268-BJM   Document 24   Filed 09/11/23   Page 12 of 15

*Carmen Socorro Martinez-Carrion. v. Commissioner of Social Security*, Civil No. 22-1268 (BJM)                      12

March 2020. By February 2020, Dr. Gonzalez-Mendez did not find Martinez-Carrion's carpal tunnel condition chronic or disabling in his RFC reconsideration. Tr. 555. In that report, he found Martinez-Carrion's "hand function without limitation . . . and no evidence that supports the use of an assistive device." Tr. 554. Further, he found Dr. Gomez's 2018 examination was "well supported and consistent with physical findings and other objective evidence" in the record. Tr. 555. Accordingly, the ALJ's reliance on the 2018 examination does not warrant remand. *See* 42 U.S.C. § 405(g) ("The Commissioner's findings of fact are conclusive when supported by substantial evidence.").

## II.     Interpretation of Raw Medical Data

In a somewhat overlapping argument, Martinez-Carrion also contends the ALJ improperly interpreted raw medical data when he noted her medical records warranted finding her carpal tunnel was not disabling. Dkt. 19 at 13. Those records, the ALJ noted, contained "no evidence of physical therapy, wrist braces to wear at night, nor evidence of more invasive treatment such as corticosteroids injections for pain or recommendations for surgery." Tr. 96. However, as mentioned, doctors referred Martinez-Carrion for hand surgery in May 2019. Tr. 440. Additionally, they administered a corticosteroid injection after diagnosing her with carpal tunnel syndrome at HIMA San Pablo Hospital in January 2019. Tr. 364. Still, Martinez-Carrion never received hand surgery and there is no evidence of subsequent injections. And Dr. Gonzalez-Mendez's previously discussed February 2020 RFC reconsideration found Martinez-Carrion remained not disabled after both the injection and surgery referral. Tr. 554–55. An ALJ may implicitly resolve conflicts in the record and need not mention all evidence favorable to the claimant when doing so. *See Linares Pagan v. Soc. Sec. Admin.*, 2020 WL 12188416, at *4 (D.P.R. Aug. 25, 2020) (finding an ALJ's failure to explicitly discuss a doctor's opinion that a claimant had manipulative limitations did not

warrant remand in a carpal tunnel case). Thus, the ALJ's failure to mention Martinez-Carrion's January 2019 corticosteroid injection and May 2019 surgery referral did not warrant remand.

Further, the ALJ may defer to an examiner's RFC determination by finding it consistent with subsequent evidence in the record. *See Taryn R. M. v. Saul*, 2020 WL 6709557, at *6 (D. Me. Nov. 15, 2020) ("The ALJ did not derive the plaintiff's physical RFC by interpreting raw medical evidence postdating the [consultative examiner's] opinion but, rather, adopted the [consultative examiner's] RFC assessment on the basis that it was not only well-supported but also consistent with the longitudinal evidence of record, including that unseen by [the consultative examiner]."). That is precisely what the ALJ did here. Thus, he did not determine Martinez-Carrion's physical RFC by interpreting raw medical evidence postdating Dr. Gomez's opinion.

I note that the ALJ went beyond omitting or interpreting evidence by incorrectly stating that Martinez-Carrion received no corticosteroid injections or surgery referrals. Tr. 96. However, that error was harmless because Dr. Gonzalez-Mendez's RFC reconsideration postdates both events and nevertheless found Martinez-Carrion not disabled. Additionally, Martinez-Carrion points to no carpal tunnel treatment records after her May 2019 surgery referral. *See Linares Pagan*, 2020 WL 12188416, at *3 (stating ALJ properly found claimant with carpal tunnel not disabled after noting she had carpal tunnel release surgery but no significant follow-up treatment). Further, the ALJ addressed Martinez-Carrion's carpal tunnel condition when determining her RFC "by including manipulative, postural and environmental limitations." Tr. 94, 97. Accordingly, to the extent the ALJ erred, those errors are harmless and do not warrant remand.

### III.  Development of Record

Martinez-Carrion alternatively argues the ALJ should have further developed the record regarding her carpal tunnel by taking medical expert testimony at a supplemental hearing. Dkt. 19

*Carmen Socorro Martinez-Carrion. v. Commissioner of Social Security*, Civil No. 22-1268 (BJM)                 14

at 14–15 (citing *Cartagena v. Comm'r of Soc. Sec.*, 2016 WL 3093445, at *5 (D.P.R. June 1, 2016)). "A claimant, however, has the burden of providing evidence to establish how her impairments limit her RFC." *Linares Pagan*, 2020 WL 12188416, at *3 (citing 42 U.S.C. § 423(d)(5)(A); *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001)). Yet, when evidence in a claimant's record is insufficient or inconsistent, the ALJ may further develop the record. 20 C.F.R. § 404.1520b(b). The *Cartagena* court noted the ALJ neglected this duty because the record there contained no physical RFC assessment and found the ALJ failed to question the claimant about several physical impairments mentioned in her disability report. *Id.* at 4–5.

Here, the ALJ relied on Dr. Gomez's assessment of Martinez-Carrion's physical RFC, which was supported by Dr. Gonzalez-Mendez's assessment. And the ALJ questioned Martinez-Carrion regarding her carpal tunnel. Tr. 118–21. During that questioning, Martinez-Carrion said the condition made sleeping difficult, but did not testify to any work-related functional limitations. Tr. 118–19. Her representative did not explore the issue when questioning her. *See Faria v. Comm'r of Soc. Sec.*, 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998) ("When a claimant is represented, the ALJ, 'should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored.'") (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)). Martinez-Carrion's brief likewise asserts she cannot sleep with the pain due to her carpal tunnel symptoms but does not address work-related functional limitations. Dkt. 19 at 11. Because the evidence regarding Martinez-Carrion's RFC was neither insufficient nor inconsistent, and Martinez-Carrion was represented at her hearing, the ALJ had no obligation to further develop the record. Accordingly, the ALJ's failure to take medical expert testimony at a supplemental hearing does not warrant remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

   **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of September, 2023.

                                        *S/ Bruce J. McGiverin*
                                        BRUCE J. MCGIVERIN
                                        United States Magistrate Judge